UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

STARSHIP 1, LLC, a Delaware Limited
Liability Company,

  Plaintiff,                                                                 Judge:

vs.

                                                     COMPLAINT

SKY SUPPORT, LLC, a Florida Limited Liability
Company, and RELIABLE JET MAINTENANCE,
LLC, a Florida Limited Liability Company.

  Defendants.

_____/     Jury Trial Demanded

## COMPLAINT FOR DAMAGES

      Plaintiff, Starship 1, LLC ("Plaintiff Starship"), by and through the undersigned counsel,
sue the Defendants, Sky Support, LLC ("Defendant Sky Support") and Reliable Jet Maintenance,
LLC ("Defendant RJM") (collectively, the "Defendants") and makes the following allegations:

## PARTIES, JURISDICTION, AND VENUE

      1.      Plaintiff Starship is a Delaware Limited Liability Company, whose principal place

of business is 3703 Cypress Creek Parkway, Suite 103, Houston, Texas 77068.

      2.      Defendant Sky Support is a limited liability company organized under the laws of

the state of Florida.

      3.      Defendant Sky Support has a principal address of 3900 Airport Road, Boca Raton,

Florida 33431.

      4.      Defendant Sky Support has performed business transactions out of a maintenance

facility located at the Opa Locka Executive Airport in Miami-Dade County, Florida; to wit: 4281

NW 145th Street, Opa-Locka, Florida 33054.

5.      Defendant Sky Support stipulated to receive service of process in this case by personal service upon its registered agent, Richard L. Richards, Esq. at his Coral Gables Florida office.

6.      Defendant Sky Support does business in the Southern District of Florida.

7.      Defendant RJM is a limited liability company organized under the laws of the state of Florida.

8.      Defendant RJM has a principal address of 3900 Airport Road, Hanger 1, Boca Raton, Florida 33431.

9.      Defendant RJM has performed business transactions out of a maintenance facility located at the Opa Locka Executive Airport in Miami-Dade County, Florida; to wit: 4281 NW 145th Street, Opa-Locka, Florida 33054.

10.     Defendant RJM stipulated to receive service of process in this case by personal service upon its registered agent, Richard L. Richards, Esq. at his Coral Gables Florida office.

11.     Defendant RJM does business in the Southern District of Florida.

12.     There is complete diversity of citizenship between the Plaintiff and the Defendants in this case. The amount in dispute in this action, exclusive of fees, interest, and costs, exceeds the sum of $75,000.00. Therefore, the court has jurisdiction over this dispute under 28 U.S.C. §1332.

13.     Venue in this district is proper under 28 U.S.C. §1391 because the substantial part of the events giving rise to the claims occurred in Miami-Dade County.

14.     The Parties have stipulated that Federal Court, specifically the Southern District of Florida, is the proper venue for this case to be heard.

**FACTS**

15.     The corporate records recorded with the Florida Secretary of State, show that the Defendant Sky Support has three authorized members: Defendant RJM (manager), Greg Wright (Vice President) and James Stormont (President).

16.     The corporate records recorded with the Florida Secretary of State, show that Greg Wright and James Stormont are managers of Defendant RJM.

17.     Starship is the owner of one (1) Bombardier Inc. Challenger 601, Model Cl600-2B16 (CL601-3A), Serial Number 5086, Aircraft, Registration Number N723GH, and such other equipment or property installed thereon or therein (collectively, the "Aircraft").

18.     Starship is in the busines of leasing the Aircraft to third parties for on-demand charter services and other revenue generating activities.

19.     Starship is obligated to pay Aircraft related expenses to third parties including, but not limited to, subscription services, insurance, management fees, salaries to the pilots and other employees and contractors it employs or contracts for the furtherance of Starship's revenue earning goals.

20.     In or about January 2021, the Aircraft was due for certain scheduled maintenance (the "Scheduled Maintenance"), including Defendant RJM.

21.     In furtherance of completing the Scheduled Maintenance, Starship solicited bids from various aircraft repair facilities to perform these repairs, including Defendant RJM.

22.     The Federal Aviation Administration (the "FAA") requires the facility that performs such maintenance on aircraft used in commercial operations, similar to the Plaintiff's Aircraft, to be properly certified and have proper endorsements on its certificate that indicate specific makes and models of the aircraft upon which the repair facility is authorized to work ("Part 145 Certified").

23.     Each repair facility must have its own Part 145 Certification.

24.     Part 145 Certifications are not transferrable among or between locations, regardless of common ownership, and cannot be otherwise leased or lent to another entity or repair facility location.

25.     The repair facility where the work is to be performed must be properly Part 145 Certified.

26.      The precise location at which repair and maintenance services are to be performed must be listed on the Part 145 certificate.

27.     Defendant Sky Support is not certified by the FAA and does not hold Part 145 Certificate.

28.     Defendant RJM's website (www.reliablejet.com) advertises that the Opa Locka Executive Airport location is Part 145 Certified.

29.     Based upon the information posted on Defendant RJM's website, and after viewing same, a representative of Starship contacted Defendant RJM in furtherance of hiring Defendant RJM to complete the Scheduled Maintenance.

30.      On January 12, 2021, at 11:42AM, Starship's corporate representative received an email communication from Luisa Camacho, Administrative Assistant – KOPF, for Reliable Jet Maintenance, LLC, with the subject line of "RE: Estimate R1 for N723GH" which attached a modified estimate.

31.     In this email, Ms. Camacho modified the terms as printed on the estimate to require a deposit of $100,000.00 rather than the customary "50% down" and further stated that a timeslot has been reserved for the landing gear and that "on good faith" the landing gear crates has already been ordered.

32.    This email required that in order for Defendant RJM to commence with the project, the online Work Authorization form on Defendant RJM's website would have to be completed.

33.    Starship never completed the online Work Authorization form.

34.    Cooper Skeen was copied on this email.

35.    According to his email signature block, Cooper Skeen's job title was the Assistant Director of Maintenance – KOPF for Reliable Jet Maintenance LLC and he worked at 4281 NW 145th Street Opa-Locka, FL 33054; his email was Cooper@ReliableJet.com.

36.    On January 12, 2021, at 1:07PM, Starship's representative responded to Ms. Camacho's email requesting that she double check the gear pricing and send an updated estimate.

37.    The modified estimate with the new gear pricing was sent by Ms. Camacho to Starship's representative that same day at 2:56PM, increasing the cost of the repair from $35,000 to $37,000.00 for each of the three gears.

38.    When Starship's representative did not immediately respond to modified estimate by signing the estimate and completing the online Work Authorization, Cooper Skeen sent an email stating: "We are wanting to check in on the status of N723GH. We have timeslots available through the vendor for the gear but need to know when the project will commence. We want to keep you as the priority…. Our intentions are not to be pushy, but want us all to be on the same page. We are here for you."

39.    In response to this email Starship's representative engaged in a telephonic conversation with Mr. Skeen, the contents of which were memorialized in Mr. Skeen's follow-up email of January 15, 2021 at 1:19PM referencing the communication and the agreed upon custom pricing along with assurances that certain fees would not be charged.

40.     Starship's representative accepted these terms as if incorporated into the agreement between Starship and Defendant RJM; Cooper Skeen did not object.

41.     Thereafter, Starship's representative signed the estimate and provided a copy of same to Defendant RJM by email to Cooper Skeen. *A true and correct copy of this agreement is attached hereto as Exhibit "A" and shall hereinafter be referred to as Exhibit A.*

42.     Exhibit A included items that were not to exceed a fixed price as indicated, as well as items whose costs were to be determined, if required.

43.     Over the next several days, Starship's representative and Cooper Skeen discussed Starship's urgency to return the Aircraft to service.

44.     Cooper Skeen provided Starship with a work completion date of March 12, 2021.

45.     Upon reaching the agreement on the downtime of the Aircraft, Starship delivered the Aircraft to the Opa-Locka Executive Airport repair facility.

46.     Exhibit A is an accepted estimate provided by Defendant RJM at 4281 NW 145th Street, Opa-Locka, Florida 33054 (the "Opa-Locka Location").

47.     The Opa-Locka Location has the following station certification number: CRS# LCPR025G  OMAC-E #553.

48.     On or about January 21, 2021, Starship caused to be wired an agreed deposit of $100,000.00 [One Hundred Thousand Dollars] into the bank account titled "Sky Support LLC" as instructed by Ms. Camacho in her January 15, 2021 email.

49.     Sky Support LLC was the D.B.A. for Reliable Jet Maintenance, LLC.

50.     Thereafter, Starship caused two additional payments to be wired into the same bank account:

a. On or about April 9, 2021, Starship caused a payment of $130,000.00 [One Hundred and Thirty Thousand Dollars] to be wired to Defendant RJM through its bank account titled Sky Support LLC.

b. On or about April 13, 2021, Starship caused a payment to be of $79,000.00 [Seventy-Nine Thousand Dollars] to be wired to Defendant RJM through its bank account titled Sky Support LLC.

51.    Starship was provided with a revised estimate dated February 26, 2021. *A true and correct copy of this document is attached hereto as Exhibit "B" and will hereinafter be referred to as "Exhibit B".*

52.    The heading on Exhibit B is identical to the heading on Exhibit A.

53.    Exhibit B modifies the scope of work delineated in Exhibit A by increasing the cost of the Scheduled Maintenance by $118,686.00 [One Hundred and Eighteen Thousand, Six Hundred and Eighty-Six Dollars].

54.    In addition to changing the costs to three items on page 2 of Exhibit A, an increase of $101,750.00, Exhibit B added 42 additional items for service and repair (the "Unauthorized Modifications").

55.    The Unauthorized Modifications were known or should have been known to Defendant RJM before January 12, 2021.

56.    No representative for Starship ever approved the modifications as written in Exhibit B.

57.    On or about March 16, 2021, during an in person meeting at the Opa-Locka Location, Cooper Skeen provided assurances to a Starship's representative that 90% of the scope

of work as delineated on Exhibit B was completed, with the remaining 10% to be completed within 2 weeks.

58.     The Defendants never completed the scope of work as delineated in Exhibit A.

59.     On or about June 4, 2021, a representative on behalf of Starship who was physically present at the Opa-Locka Location observed that the Opa-Locka Location appeared to have been abandoned by the Defendants: there were no employees or personnel in the office or working on the Aircraft; there was almost no office furniture or equipment in office space; and all personal or office supplies that had been in the office during previous visits were no longer present.

60.     On or about June 4, 2021, Cooper Skeen informed a representative on behalf of Starship that:

      a.   Defendant RJM was not paying its bills for Opa-Locka Location;

      b.   Defendant RJM no longer had financial backing required to support the Part 145 location;

      c.   The Opa-Locka Location was closing and is no longer on Defendant RJM's Part 145 certificate;

      d.   Cooper Skeen was now working from Defendant RJM's Boca Raton Executive Airport location, 3900 Airport Road;

      e.   Defendant Sky Support had terminated its employees, including Louisa Camacho; and

      f.   the Aircraft was not airworthy and would not be made Airworthy by the Defendants because of the lack of repair facility and the finances to complete the work.

61.     When questioned by Starship representative about payments made to Defendant Sky Support, Cooper Skeen stated:

      a.   that Defendant Sky Support is just a shell company;

      b.   that Defendant Sky Support does not have a Part 145 certificate; and

      c.   Defendant Sky Support is used by Defendant RJM to protect Defendant RJM from liability for the work performed.

62.     Cooper Skeen represented to the representative for Starship that another repair facility would be located and rented at the Opa-Locka Executive Airport to complete the scope of work as delineated on Exhibit A which would make the Aircraft airworthy.

63.     Also on June 4, 2021, Cooper Skeen provided the representative of Starship with invoice number 21-4250 demanding payment in the amount of $91,584.85 [Ninety-One Thousand, Five Hundred and Eighty-Four Dollars and Eighty-Five Cents]. *A true and correct copy of this invoice is attached hereto as Exhibit "C" and shall hereinafter be referred to as "Exhibit C".*

64.     Exhibit C increases the cost of the Scheduled Maintenance by $152,584.00 over the original cost of Exhibit A, or a total of $400,584.85 [Four Hundred Thousand, Five Hundred and Eighty-Four Dollars and Eighty-Five Cents].

65.     Exhibit C directly conflicts with Exhibit B wherein certain line items in Exhibit B contain the express language "Note: This price is not to be exceeded" but wherein the entries on Exhibit C clearly exceed the price. Compare items 33, 34, and 35 on page 2 of Exhibit B with Discrepancy 33 on page 7 of Exhibit C.

66.     The increase in costs in Exhibit C were never approved by Starship.

67.     Upon being presented Exhibit C, the representative on behalf of Starship immediately informed the Defendants that Starship disputes the contents of the invoice, including the amount and fact that work has been performed on some of the items.

68.     Subsequent inspections on the Aircraft identified major discrepancies between the scope of the work billed for on Exhibit C and the actual scope of work performed to the Aircraft.

69.     Between June 5, 2021 and June 7, 2021, Cooper Skeen demanded payment in full for Exhibit C.

70.     Cooper Skeen stated that the payment would fund the lease on a new hangar facility to complete the scope of work on the Aircraft.

71.     At the time that Cooper Skeen made the demand for payment, Cooper Skeen knew or should have known Defendants RJM and Sky Support were neither Part 145 certificated nor authorized to perform work from any Opa-Locka location, not to mention from someone else's hangar.

72.     The Aircraft was not ready for redelivery; payment in full was not yet due.

73.     On June 7, 2021, after the good will between the Parties had broken down, Starship sent a demand letter to the Defendants in a good faith effort to resolve the issues. *A true and correct copy of this demand letter is attached hereto as Exhibit "D" and hereinafter will be referred to as "Exhibit D".*

74.     Sometime between June 7, 2021 and June 10, 2021, the Aircraft was abandoned the tarmac at Opa-Locka Executive Airport.

75.     The Aircraft was left unsecured and unprotected from the elements on the tarmac in the middle of Hurricane season.

76.     Starship was not informed by anyone representing either Defendant RJM or Sky Support that the Aircraft was being abandoned in a vulnerable state.

77.     As a result of the Aircraft being abandoned, Starship incurred airport parking and storage fees from the lessor of the tarmac at that location.

78.     On June 10, 2021, Starship retook possession of its Aircraft.

79.     After retaking possession, Starship attempted to mitigate the damages caused by the Defendants, as well as to protect the Aircraft that was damaged and abandoned by either or both Defendants.

80.     After retaking possession of its Aircraft, Starship sought inspections (the "Post Repossession Inspections") of the Aircraft to identify the work actually completed and the scope of damage sustained by the Aircraft while exposed to the elements on the tarmac.

81.     These Post Repossession Inspections identified gross discrepancies between the charges on Exhibit C and the repairs or maintenance completed as well as significant damages to the Aircraft resulting from either poor-quality workmanship or negligence.

82.     The Post Repossession Inspections identified poor-quality workmanship on those repairs actually completed, negligent and unsafe reassembly of the Aircraft, and actual damage to the Aircraft, including but not limited to:

   a.   The Aircraft's LaserRef navigation system and its controller by physically damaging the #2 unit face by either stepping on it or dropping and object onto it;

   b.   The cabin latch door mechanisms;

   c.   Data loader failure due to poor connection assembly;

   d.   The paint of the aircraft fuselage in multiple locations now had scuff marks;

    e.   The navigation controller #1 by either dropping it or stepping on it;

    f.   Improper installation of fuel manifold causing a fuel leak from the auxiliary tank;

    g.   Cabin entertainment system was no longer functioning;

    h.   DC/AC power supply wiring in cabin was shorted causing the power supply to fail; and

    i.   Oven controls were damaged and no longer functioning.

83.    Based upon the Post Repossession Inspections and information, Starship now believes that the Defendants, either one or both:

    a.   Employed unlicensed mechanics and other unqualified personnel to perform work on the Aircraft;

    b.   Failed to install parts listed on and charged for in Exhibit C;

    c.   Removed, failed to reinstall, and lost or otherwise disposed of various parts originally installed on the Aircraft that were no longer installed on the Aircraft and were not otherwise recovered in the Aircraft at the time the Aircraft was reclaimed by Starship;

    d.   Removed, failed to return or otherwise disposed of or lost certain valuable document that Starship provided with the Aircraft and must now be identified and replaced, where possible;

    e.   Removed, failed to return, lost, or otherwise disposed of various other components to the Aircraft are no longer installed or within the Aircraft, and must be identified and replaced.

84.     Starship filed its Complaint in the 15th Judicial Circuit in and for Palm Beach County, Florida on June 22, 2021, but did not perfect service of process until July 22, 2021. In the interim, Starship made attempts to resolve or settle the issues as enumerated herein.

85.     On July 6, 2021, Greg Wright executed a Verified Claim of Lien (the "Lien") against the Aircraft, wherein his signature attested that the facts and information contained in the Lien were true and accurate.

86.     One day later, a notary public affixed her seal to the Lien acknowledging Mr. Wright's signature.

87.     On July 16, 2021, the Lien was recorded in the public records in Miami-Dade County, Florida; to wit: CFN: 20210515952 BOOK 32626 PAGE 1280. *A true and correct copy of the Miami-Dade County Lien is attached hereto as Exhibit "E" and will hereinafter be referred to as "Exhibit E".*

88.     At the time of filing the Lien, either of the Defendants and Greg Wright, as both manager of Defendant RJM and VP of Defendant Sky Support, knew or should have reasonably known that Starship was disputing the charges on Exhibit C as delineated in Starship's demand letter, Exhibit D.

89.     At the time of filing the Lien, either of the Defendants and Greg Wright, as both manager of Defendant RJM and VP of Defendant Sky Support,  knew or should have reasonably known that there was no invoice or amount due to Defendant Sky Support based upon the actual work completed, the actual parts installed, and the failure of the Defendants to return the Aircraft to airworthy condition either within the time frame promised by Cooper Skeen or at all.

90.     Defendant Sky Support did not have possession of the Aircraft at any time after June 10, 2021, including the relevant dates in July: July 6, July 7, and July 16, 2021.

91.     Sometime thereafter, a modified version of the Lien, with what appear to be handwritten corrections to the information identifying the Aircraft, was filed with the FAA. *A true and correct copy of the FAA Lien is attached hereto as Exhibit "F" and hereinafter will be referred to as "Exhibit F".*

92.     Despite the alteration to the description of the Aircraft, the date of attestation by Greg Wright remains the same; Mr. Wright's signature is identical in all respects; the notary's seal was still dated July 7, 2021.

93.     Defendant Sky Support never notified Starship that the Lien had been placed against the Aircraft.

94.     At all times relevant to the events delineated herein, Starship and its representatives relied upon the false representations made by the Defendants and their representatives, and as a result suffered the damages outlined in this Complaint.

95.     Starship relied upon the representations of Cooper Skeen:

    a.   the date upon which the Aircraft would be returned to service; and

    b.   the validity of the FAA certifications for that location.

96.     Based upon the promised date that the Aircraft would be returned to service, Starship hired employees to staff the Aircraft in anticipation of return of the Aircraft to service, to wit: three (3) pilots and a third-party company to operate the Aircraft for charter.

97.     Starship has paid for the pilot training required pilots to fly the Aircraft, has paid the pilots salaries, benefits, and other costs of doing business, including a third-party charter company, which required the payment of fees and dues associated with placing the Aircraft on the charter company's certificate.

98.     The Defendants delayed the work, did not perform the work, damaged the Aircraft, abandoned the Aircraft on the tarmac in a compromising condition, and refused to provide the required documentation proving what work was completed which caused further delays in returning the Aircraft to service.

99.     Starship had contractual obligations for flights that have had to be rescheduled with a substitute aircraft, forcing the Starship to lease a replacement aircraft.

100.    Starship has lost no less than six (6) months of revenue, use, and deprecation on the Aircraft, as well as the pro-rated costs of the maintenance for the calendar items now coming due.

## I.      COUNT ONE – PIERCE THE CORPORATE VEIL AGAINST BOTH DEFENDANTS

101.    Starship realleges the allegations in paragraphs 1 through 100 inclusive, as if fully set forth herein.

102.    At all relevant times, Defendant Sky Support was a mere instrumentality of Defendant RJM.

103.    At all relevant times, Defendant RJM was a manager of Defendant Sky Support.

104.    At all relevant times, the two other managers of Defendant Sky Support, were also managers of Defendant RJM.

105.    At all relevant times, Defendant RJM dominated and controlled Defendant Sky Support to such an extent that Defendant Sky Support's independent existence was in fact non-existent and the shareholder, Defendant RJM, was in fact the alter-ego of the Defendant Sky Support.

106.    In the alternative, Defendant RJM's control over Defendant Sky Support is to such a degree that Defendant Sky Support is a mere instrumentality of Defendant RJM.

107.     At all times relevant, Defendant Sky Support represented to Starship that Sky Support LLC, D.B.A. Reliable Jet Maintenance, LLC.

108.     At all times relevant, Defendant RJM represented to Starship that it was doing business out of the Opa-Locka Location, using Defendant Sky Support's physical address and phone numbers.

109.     At all times relevant and throughout this litigation, Defendant RJM and Defendant Sky Support have relied on the same FAA certifications.

110.     The payment instructions that were provided to Starship for the wiring of funds for work allegedly performed by Defendant RJM was into a bank account titled Sky Support LLC and the wire instructions indicate that the Sky Support LLC is the DBA for Defendant RJM.

111.     Defendant RJM and Defendant Sky Support use their corporate structure to commit fraud upon Starship by avoiding the requirement to have each repair station separately certified by the FAA and to entice Starship into agreeing to allow Defendant RJM to service and repair the Aircraft without first disclosing that the service and repair would be accomplished by Defendant Sky Support and with unlicensed and untrained "technicians".

112.     By withholding this information, even after being directly asked, the Defendants' misconduct is deliberate.

113.     The Defendants have used their business names interchangeably, have used common office space, have/had common employees and use a centralized accounting.

114.     Upon information and belief, the Defendants and their owners and managers have commingled the funds provided by Starship between and among their various entities.

115.    Upon information and belief, the Defendant Sky Support, in its own name and under its fictitious name of Reliable Jet Maintenance of Opa Locka have rendered services to Starship on behalf of Defendant RJM.

116.    Upon information and belief, the allocation of the profit and loss between the Defendant entities is not recorded in any way because of the commingling of funds.

117.    Upon information and belief, the Defendants made undocumented transfers of funds from Starship between each other.

118.    Defendant Sky Support has placed a lien against the Aircraft for money it claims Defendant Sky Support is owed for work Defendant Sky Support claims it did where the estimates for this work, including costs, were provided by Defendant RJM.

119.    On various occasions during the relevant period of January through June 2021, Cooper Skeen told Starship he worked for either Defendant Sky Support or Defendant RM depending on the circumstances.

120.    The Defendants have lost limitation on entity liability and neither Defendant should be permitted to hide behind either sham entity because the evidence shows that the Defendants' corporate form has been used as part of an unfair device to achieve an inequitable result and to directly cause damage to Starship.

WHEREFORE, the Plaintiff Starship 1, LLC seeks a ruling and order from this Court piercing the corporate veils of both Defendants and charging both Defendants, Sky Support, LLC and Reliable Jet Maintenance, LLC with any judgment that is awarded in favor of the Plaintiff and against either or both Defendants and their members and/or managers.

## COUNT II – FRAUDULENT LIEN
### (AGAINST DEFENDANT SKY SUPPORT, LLC)

121.    Starship realleges the allegations in paragraphs 1 through 18 and 41 through 93, inclusive, as if fully set forth herein.

**122.**    Defendant Sky Support filed a Verified Claim of Lien purports to be in the amount of $78,574.02.

**123.**    Defendant Sky Support was never authorized to perform work on the Aircraft.

**124.**    Defendant Sky Support never made a demand for payment to Starship.

**125.**    Defendant Sky Support has not performed any of the work on the Aircraft, or if did, this work was done illegally since Defendant Sky Support was not certified to perform such work.

**126.**    Any work performed by any unlicensed or uncertified personnel or entity would not be authorized by law to be sufficient or meet the airworthiness and release to service requirements.

**127.**    Under F.S. §329.51, a lienor must have possession of the property at issue at the time it perfects a lien. *Commercial Jet, Inc. v. U.S. Bank, N.A.*, 45 So. 3d 887 (Fla. 3d DCA 2010); ***Int'l Turbine Indus., LLC v. Reliable Jet Maint.**, **LLC, 2018 U.S. Dist. LEXIS 215595 (S.D. Fla. 2018).***

**128.**    Defendant Sky Support did <u>not</u> have possession of the Aircraft on July 6, 2021, the date that Greg Wright affixed his signature to the Lien.

**129.**    Defendant Sky Support did <u>not</u> have possession of the Aircraft on July 7, 2021, the date the Lien was notarized.

**130.**    Defendant Sky Support did <u>not</u> have possession of the Aircraft on July 16, 2021, the date the Lien was recorded in the public records by the Miami-Dade Clerk of the Court.

**131.** Defendant Sky Support was never authorized by Starship to take possession or have access to the Aircraft. Any access to the Aircraft by Defendant Sky Support would have been unauthorized access resulting in a trespass.

**132.** The relevant portion of § 713.31(2), F.S. provides:

> Any lien asserted under this part in which the lienor has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lean or in which the lienor has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.

133. The Lien makes a claim for "monies due for labor, material, repairs, fuel and services in the amount of $78,547.02".

134. Upon information and belief, the amount of the Lien is based upon the amounts charged in Exhibit C.

135. Starship has identified discrepancies between work charged on Exhibit C or parts charged on Exhibit C and the work and parts actually performed to the Aircraft wherein Exhibit C charges for work and parts not performed or installed on the Aircraft.

136. Assuming Defendant Sky Support and Defendant RJM are one and the same, the Defendant Sky Support has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lean or in which the lienor has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.

137. The Lien is fraudulent because it seeks payment for work not performed upon or materials not furnished for the property upon which the defendants seek to impress such lean.

138.    The Lien is fraudulent because Defendant Sky Support was not authorized or certified to perform the work on the Aircraft.

139.    The Lien is fraudulent because Defendant Sky Support did not have possession of the Aircraft at the time it purported to perfect the lien. See § 329.51, F.S.

140.    The Lien as recorded with the Clerk of Court in Miami-Dade County is fraudulent because it contains an incorrect description of the Aircraft.

141.    The Lien as recorded with the FAA is fraudulent because it contains handwritten and illegible corrections to the face of the Lien, written into the Lien after the date of attestation by Greg Wright and notarization.

142.    As a result of the fraudulent lien, Starshiip has suffered damages.

143.    Starship has engaged its attorney and is entitled to its reasonable attorney's fees and punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due under §713.31(c), Fla. Stat.

WHEREFORE, the Plaintiff Starship 1, LLC seeks a judgment from this Court in its favor and against the Defendant Sky Support, LLC discharging the lien in a form satisfactory to the FAA, reasonable attorney's fees and costs, damages, which shall include court costs, clerk's fees, reasonable attorney's fees and cost for the services in securing the discharge of the lien, the amount of any premium for any bond given to obtain the discharge of the lien, interest on any money deposited for the purpose of discharging lean, and punitive damages in the amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually do or to become due.

## COUNT III - FRAUD IN THE INDUCEMENT
### (Against Both Defendants)

144.     Plaintiff realleges all the allegations contained in paragraphs 1 through 61 inclusive, as if fully set forth herein.

145.     At all times material hereto, the Defendants acted jointly and in concert, on behalf of each other, acting as the alter ego of each other.

146.     At all times material hereto, the Defendants concealed the existence of Defendant Sky Support, fraudulently misrepresented that the Defendant Sky Support was the "DBA" of Defendant RJM, and never disclosed to Starship that Defendant Sky Support would be responsible for making the repairs and completing the service to the Aircraft.

147.     In or about January 1, 2021 through January 12, 2021, Cooper Skeen, on behalf of Defendant RJM as its representative, made false statements of material fact by representing to Starship that the Opa-Locka Location was Part 145 Certified by the FAA.

148.      In or about January 1, 2021 through January 12, 2021, Cooper Skeen, on behalf of Defendant RJM as its representative, made false statements of material fact by representing to Starship that work performed on the Aircraft would be accomplished only by mechanics that are on Defendant RJM's certificate, who are properly trained, and properly licensed to perform work on the Challenger 601 Aircraft.

149.     In or about January 1, 2021 through January 12, 2021, Cooper Skeen, on behalf of Defendant RJM as its representative, made a false statement of material fact by representing to Starship that the Defendants had the repair facility and the resources to complete the Scheduled Maintenance.

150.     In or about January 1, 2021 through January 12, 2021, Cooper Skeen, on behalf of Defendant RJM as its representative, made a false statement of material fact by representing to

Starship that the Scheduled Maintenance would be completed within six (6) to eight (8) weeks after delivery of the Aircraft on January 12, 2021.

151.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen, on behalf of Defendant RJM as its representative, made a false statement of material fact by representing to the Starship that Scheduled Maintenance would cost $248,000.00 [Two Hundred and Forty-Eight Thousand Dollars].

152.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen, on behalf of Defendant RJM as its representative, made a false statement of material fact when it presented Starship with Exhibit A which did not include the complete scope of repairs and maintenance required to return the Aircraft to airworthy.

153.    In or about January 1, 2021 through January 12, 2021, Defendant Sky Support was not Part 145 Certified.

154.    In or about January 1, 2021 through January 12, 2021, the Opa-Locka Location was not Part 145 Certified.

155.    The certification information that appears on the upper left corner of Exhibit A did not apply to the Opa-Locka address provided in the upper left corner of Exhibit A and just above the certification information.

156.    Mr. Skeen's representations, on behalf of the Defendant RJM and as its representative, that the Opa-Locka Location or Defendant Sky Support was Part 145 Certified by the FAA was patently and knowingly false; a fact known or should have been known to the Defendants.

157.    Defendant RJM's use of the information appearing in the upper left corner of Exhibit A including the representations that the Opa-Locka location was Part 145 Certified was patently and knowingly false.

158.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen on behalf of Defendant RJM as its representative, knew or should have known that the Scheduled Maintenance could not be completed within eight (8) weeks.

159.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen on behalf of Defendant RJM as its representative, knew or should have known that the cost of the Scheduled Maintenance would considerably exceed $248,000.00 [Two Hundred and Forty-Eight Thousand Dollars].

160.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen on behalf of Defendant RJM as its representative misrepresented the certifications held by each Defendant, if at all, to fraudulently induce Starship to enter into Exhibit A.

161.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen on behalf of Defendant RJM as its representative misrepresented the length of time it would take complete the Scheduled Maintenance to fraudulently induce Starship to enter into Exhibit A.

162.    In or about January 1, 2021 through January 12, 2021, Cooper Skeen on behalf of Defendant RJM as its representative misrepresented the total cost for completing the Scheduled Maintenance to fraudulently induce Starship to enter into Exhibit A.

163.    Starship relied on Cooper Skeen's misrepresentations made on behalf of the Defendant RJM and as its representative when deciding to enter into the contract with Defendant RJM.

164.    Cooper Skeen's misrepresentations made on behalf of the Defendants and as their representative are the natural and proximate cause of Starship's damages to its Aircraft and its business.

WHEREFORE, Plaintiff Starship 1, LLC demands judgment in fraud in the inducement, damages, and lost profits against Defendants Sky Support, LLC and Reliable Jet Maintenance, LLC, and other and further relief as the Court may deem just and proper.

### COUNT IV – BREACH OF CONTRACT
**(Against Defendant Reliable Jet Maintenance, LLC)**

165.    Plaintiff realleges all the allegations contained in paragraphs 1 through 100, inclusive, as if fully set forth herein.

166.    At all times material hereto, the Defendants acted jointly and in concert, on behalf of each other, acting as the alter ego of each other.

167.    Cooper Skeen, on behalf of Defendant RJM, provided Starship with Exhibit A on or about January 21, 2021.

168.    Starship approved this estimate. *See Exhibit A*.

169.    Pursuant to the terms Exhibit A, Starship agreed to pay consideration of $248,000.00 [Two Hundred and Forty-Eight Thousand Dollars] in exchange for Defendant RJM's promise to complete work and install the parts pursuant to the estimate described in Exhibit A. *Id.*

170.    Defendant RJM instructed Starship to remit its payment to Defendant Sky Support, which Defendant RJM identified as its DBA.

171.    Starship caused three separate payments to be wired into Defendant Sky Support's bank account, on three separate dates, using the bank account information provided by Defendant RJM, in the total amount of $309,000.00 (Three Hundred and Nine Thousand Dollars).

172.    The total amount that Starship caused to be wired to Defendant Sky Support's bank account in payment for the scope of work delineated and approved on Exhibit A  exceeds the agreed amount of Exhibit A by $61,000.00 (Sixty-One Thousand Dollars).

173.    The work as delineated in Exhibit A was never completed to the Aircraft.

174.    At the time that the Aircraft was repossessed by Starship, Starship paid more than the full amount of Exhibit A.

175.    Defendant RJM failed to perform its obligations under Exhibit A by failing to complete the work and redeliver the Aircraft.

176.    Consequently, Starship has been damaged by the Defendant RJM's breach in an amount that exceeds $700,000.00 (Seven Hundred Thousand Dollars).

177.    Starship continued to be damaged until such time as the Aircraft was returned to service.

178.    Exhibit A provides for the reimbursement of attorney's fees and costs.

179.    Starship has hired the undersigned counsel and has agreed to pay reasonable attorney's fees.

**WHEREFORE**, Plaintiff Starship 1, LLC demands judgment in breach of contract and for damages and lost profits against Defendant Reliable Jet Maintenance, LLC, together with pre-judgment interest and post-judgment interest, its attorney's fees and costs, and other and further relief as the Court may deem just and proper. Plaintiff reserves the right to amend this Complaint to include all additional damages as the litigation progresses.

## COUNT V – UNJUST ENRICHMENT
### (Against Both Defendants)

180.    Plaintiff realleges all the allegations contained in paragraphs 1 through 100 inclusive, as if fully set forth herein.

181.    At all times material hereto, the Defendants acted jointly and in concert, on behalf of each other, acting as the alter ego of each other.

182.    Starship conferred a benefit on the Defendants by causing $309,000.00 [Three Hundred and Nine Thousand Dollars] to be wired into Defendant Sky Support's bank account at the direction of and for the benefit of Defendant RJM.

183.    Defendant Sky Support knowingly and voluntarily accepted and retained the benefit conferred.

184.    Defendant RJM knowingly and voluntarily accepted and retained the benefit conferred.

185.    Defendant RJM directed the payment to Defendant Sky Support.

186.    The circumstances are such that it would be inequitable for the Defendant Sky Support to retain the benefit conferred.

187.    The circumstances are such that it would be inequitable for the Defendant RJM to retain the benefit conferred.

**WHEREFORE**, Plaintiff Starship 1, LLC demands judgment in unjust enrichment and for damages against Defendants Sky Support, LLC and Reliable Jet Maintenance, LLC, together with pre-judgment interest and post-judgment interest, and other and further relief as the Court may deem just and proper. Plaintiff reserves the right to amend this Complaint to include all additional damages as the litigation progresses.

### COUNT VI – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"); Fla. Stat. §501.201, *et seq*. (Against both Defendants)

188.    Plaintiff realleges all the allegations contained in paragraphs 1 through 100, inclusive, as if fully set forth herein.

189.     At all times material hereto, the Defendants acted jointly and in concert, on behalf of each other, acting as the alter ego of each other.

190.     Defendant RJM advertises on its website that the Opa-Locka Location is Part 145 Certified.

191.     Starship is a consumer as defined by FDUTPA, §501.203(7), FLA. STAT.

192.     Between January 1, 2021 and January 12, 2012, Starship was actively and aggressively solicited by Cooper Skeen on behalf of the Defendant RJM and as its representative.

193.     Cooper Skeen induced Starship to enter into Exhibit A with Defendant RJM for the Scheduled Maintenance at the Opa-Locka Location in Miami-Dade County, Florida.

194.     Between January 1, 2021 and January 12, 2012, Cooper Skeen, on behalf of the Defendant RJM and as its representative, lured Starship to bring the Aircraft to the Opa-Locka Location by offering an extremely competitive price and quick turn around time for the Scheduled Maintenance and through misrepresentations regarding the Part 145 Certifications.

195.     Both Defendants knew at the time, January 1, 2021 through January 12, 2021, that the work included in Exhibit A deceptively misrepresented the scope of work that would actually be required for the Aircraft to be maintained and to pass the required inspections.

196.     Both Defendants knew at the time, January 1, 2021 through January 12, 2021, that the work included in Exhibit A deceptively misrepresented the cost of the work that would have to be completed for the Aircraft to pass the required inspections.

197.     Both Defendants knew at the time that Cooper Skeen provided Starship with Exhibit A that the Opa-Locka Location was not Part 145 certified and could not provide the work necessary to complete the Scheduled Maintenance.

198.   On January 12, 2021, Starship delivered the Aircraft to the Opa-Locka Location in acceptance of Exhibit A.

199.   Between February 26, 2021 and March 9, 2021, the costs of the Scheduled Maintenance were increased by more than $100,000.00 [One Hundred Thousand Dollars] by including parts and labor that Cooper Skeen, on behalf of the Defendants and as their representative, knew or should have known were required at the time that Exhibit A was prepared.

200.   In other words, Starship was induced to deliver the Aircraft and accept Exhibit A based upon an intentionally deceptively low estimate for the cost of the Scheduled Maintenance which was increased once Starship remitted a deposit of $100,000.00 and the work began on the Aircraft.

201.   This conduct is a bait-and-switch tactic that is prohibited by FDUPTA.

202.   As a result of the Defendants' deceptive trade practices, the Plaintiff has suffered damages.

203.   The measure of the actual damages is the difference between the market value of the product in the condition in which it was delivered and its market value in the condition it should have been delivered according to the contract between the parties. *Rollins v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984).

204.   The measure of Starship's damages is the difference between the value of the Aircraft in the condition in which the Aircraft *should have been* after the Maintenance and passing all inspections as compared to the actual condition in which the Aircraft was left after Defendants abandoned the Aircraft on the tarmac in the Opa-Locka Location and without its logs and manuals.

205.   Defendants have misplaced or lost parts of the Aircraft, including the Aircraft's manuals and documents.

206.    The damages exceed $700,000, not including attorney fees and costs to bring this action.

207.    As a result of the Defendants' conduct, Starship has been forced to hire an attorney to litigate this case. Plaintiffs are entitled to recover reasonable Attorney's Fees and costs for the bringing of this litigation as provided under §501.2105, FLA. STAT.

**WHEREFORE**, Plaintiff Starship 1, LLC demands judgment in Florida Deceptive and Unfair Trade Practices Act and for actual damages against Defendants Sky Support, LLC and Reliable Jet Maintenance, LLC, together with pre-judgment interest and post-judgment interest, its reasonable attorney's fees and costs, and other and further relief as the Court may deem just and proper.

## COUNT VII – CIVIL CONSPIRACY
### (Against Both Defendants)

208.    Plaintiff realleges all the allegations contained in paragraphs 1 through 100 inclusive, as if fully set forth herein.

209.    This is an action seeking damages as a result of civil conspiracy between the Defendants Sky Support and RJM to deprive Starship of its property and funds, for the benefit of Defendants Sky Support, RJM, and their managers and officers.

210.    At all times material hereto, the Defendants acted jointly and in concert, on behalf of each other, acting as the alter ego of each other.

211.    The claims are based on the underlying claims of fraudulent inducement and the fraudulent lien. *Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d 451, 460 (Fla. 5th DCA 1999).

212.    The elements of civil conspiracy are:

a.    a conspiracy between two parties;

b.    to do an unlawful act or to do a lawful act by unlawful means,

    c.  the doing of some overt act in pursuance of the conspiracy, and

    d.  damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Koch v. Royal Wine Merchs., Ltd.,* 907 F.Supp. 2d 1332 (11ᵗʰ Cir. 2012) citing to *Raimi v. Furlong,* 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997); *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1271 (11ᵗʰ Cir. 2009)).

213.    "Proof that the Defendants committed an act which furthered the purpose of the conspiracy is an example of the type of circumstantial evidence [that can] prove the existence of an agreement." *Id.* (citing to *United States v. Arias-Izquierdo,* 440 F.3d 1168, 1182 (11ᵗʰ Cir. 2006)).

214.    In this instance, the Defendants Sky Support and RJM were co-conspirators who provided false information to Starship between January 1, 2021 and July 16, 2021 in order to take payments from Starship in an amount exceeding $400,000.00 [Four Hundred Thousand Dollars] and assert a lien against Starship's Aircraft with the intent to foreclose said lien and deprive Starship of its valuable asset.

215.    The Defendants conspired to deprive and defraud Starship of substantial funds, as fully described in these allegations, paragraphs 1 through 100, inclusive.

216.    The Defendants conspired to knowingly and intentionally:

    a.   deceive Starship about the status of the Part 145 certifications;

    b.  confuse and conflated the truth regarding the Defendant Sky Support, its separate existence from Defendant RMJ, and its lack of proper certification;

    c.  file a fraudulent lien where they did not have possession of the Aircraft at the time of perfecting the lien;

    d.   provide an intentionally deceptive estimate which provided an aggressive estimate for the Scope of Work along with promises that certain work and parts would not exceed a certain cost;

    e.   allege that an amount was due and owning when the Defendants know or should have known that there was no amount due and owing;

    f.   file a lien with the Clerk of the Court of Miami-Dade County knowing that the attestation was not affixed to the face of the lien before the notary public, who knowingly affixed a seal on a document which was not executed before her; and

    g.   file a lien with the FAA knowing that the face of the lien had been modified by illegible handwriting after the lien had been filed with the Clerk of the Court in Miami-Dade County and after the lienor had executed the lien attesting that the Aircraft that was the subject of the lien was a different aircraft than the one that was the subject of the lien filed with the Clerk of Court of Miami-Dade County.

217.    There is no requirement that each co-conspirator commit acts in furtherance of the conspiracy; it is sufficient if each conspirator knows of the scheme and assists in some way. *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008).

218.    In furtherance of the conspiracy, the Defendants Sky Support and RJM committed both unlawful and lawful acts through unlawful means in order to further their unlawful business practices.

219.    The actions of the Defendants Sky Support and RJM were overt acts in pursuit of the conspiracy.

220.    The Defendants Sky Support and RJM damaged Starship as a result of the acts done in furtherance of their conspiracy.

221.    The misconduct of the Defendants Sky Support and RJM was reckless and intentionally wanton to such an extreme degree of negligence that the Court should find that the requirements of § 768.72, Fla. Stat., have been met and impose punitive damages upon the Defendants.

**WHEREFORE**, Plaintiff Starship 1, LLC demands the entry of a judgment against the Defendants Sky Support, LLC and Reliable Jet Maintenance, LLC, for actual, consequential and punitive damages, including but not limited to, diminution of value and loss of use, court costs, attorney's fees and interest, plus such other and further relief as the Court may deem just and proper.

## COUNT VIII - NEGLIGENCE
### (Against Both Defendants)

222.    Plaintiff realleges all the allegations contained in paragraphs 1 through 72, 74 through 78, 82 through 83, 85 through 100 inclusive, as if fully set forth herein.

223.    At all times material hereto, the Defendants acted jointly and in concert, on behalf of each other, acting as the alter ego of each other.

224.    The Defendants owed Starship a duty to perform the maintenance on the Aircraft pursuant to the work delineated on Exhibit A and in a manner to maintain and preserve the Aircraft's airworthiness.

225.    The Defendants owed a duty to Starship to be Part 145 certified as the Defendants represented that they were and to adhere to the processes and procedures proscribed in the FAA regulations.

226.    The Defendants owed a duty to Starship to not damage the Aircraft and to not incur additional expenses for the storage of the Aircraft.

227.    The Defendants breached these duties by causing the Aircraft to become un-airworthy and by abandoning the Aircraft to rot and corrode in an unsecured manner on the tarmac at the Opa-Locka Executive Airport.

228.    The Defendants breached these duties by damaging the Starship's Aircraft and components of the Aircraft that required replacement and/or repair after Starship reclaimed possession of the Aircraft, causing damages to Starship.

229.    The Defendants breached these duties by failing to resolve discrepancies and closing inspection areas causing Starship to incur damages by having to hire alternative mechanics and/or repair facilities to access these areas to resolve the discrepancies.

230.    The Defendants further breached their duty to Starship by:

    a.   closing their maintenance facility without notice to Starship;

    b.  removing the Aircraft's parts without authorization from the Starship;

    c.   removing the documents from the Aircraft; and

    d.  either losing or destroying records that are required by the FAA for the Aircraft to be airworthy.

231.    The Defendants further breached their duty to Starship by:

    a.  failing to be properly certified to perform the work on the on-demand charter aircraft;

    b.  by failing to have this type of aircraft listed on the certificate; and

    c.  by failing to have adequate records and manuals to perform the work the Defendants have agreed to perform.

232.    The Defendants' breach of their duties owed to Starship is the cause of Starship's damages.

233.    Starship has suffered the following damages as a result of the Defendants' negligence:

a.   Starship paid $309,000 [Three Hundred and Nine Thousand, Dollars] to Defendants for services that the Defendants have either not completed or not started;

b.   Starship purchased a training program required to train pilots on the Aircraft before the pilots are permitted to fly the Aircraft for six months from the time of training, but Starship has not able to utilize the training program since the Aircraft is grounded. The cost of this training program is $66,000.00 [Sixty Thousand Dollars], exclusive of an additional $18,257 [Eighteen Thousand, Two Hundred Fifty-Seven Dollars] in training related travel expenses. [Total: 84,257.00 [Eighty-Four Thousand, Two Hundred and Fifty-Seven Dollars];

c.   Starship hired pilots and has been paying salaries and benefits in the amount of $180,683.00 [One Hundred and Eighty Thousand, Six Hundred Eighty-Three Dollars] from end of March 2021 through the time the aircraft was returned to service;

d.   Starship was required to re-do work allegedly performed by the Defendants and have paid in excess of $210,000 [Two Hundred and Ten Thousand Dollars] to complete this work;

e.   Starship was required to charter an alternative aircraft to mitigate the damages associated with the Defendants' conduct and to avoid cancellation of the

obligations. Starship's damages are in excess of $195,000.00 [One Hundred and Ninety-Five Thousand Dollars];

f.   Starship's Aircraft has depreciated during the months that the Aircraft has been sitting on the tarmac at the Opa-Locka Location and experienced a loss of revenue beginning on March 12, 2012 through September 2021. To date, Starship's damages are in excess of $700,000.00 [Seven Hundred Thousand Dollars].

**WHEREFORE**, Plaintiff Starship 1, LLC demands judgment in Negligence and for non-economic damages and economic damages against Defendants Sky Support, LLC and Reliable Jet Maintenance, LLC, together with pre-judgment interest and post-judgment interest and other and further relief as the Court may deem just and proper.

## RESERVATION OF RIGHT TO AMEND TO ADD PUNITIVE DAMAGES

Starship reserves the right to amend this Complaint to add a claim in punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted this 7th day of January 2022,

By:___/s/ DEBRA L. FEIT_____
DEBRA L. FEIT
FLA. BAR. NO.: 104452

STRATFORD LAW FIRM, LLC
*COUNSEL FOR PLAINTIFF*
401 EAST LAS OLAS BOULEVARD
SUITE 1400
FORT LAUDERDALE, FL 33301
954.995.5400
DEBRA@SLGFL.COM